UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

VIRGINIA ENGLISH                                                                    Plaintiff

v.                                                          Civil Action No. 1:23-cv-128-RGJ

ABERCROMBIE AND FITCH STORES,                                                    Defendants
INC.  AND ABERCROMBIE & FITCH
MANAGEMENT CO.

* * * * *

## MEMORANDUM OPINION & ORDER

Defendants Abercrombie and Fitch Stores, Inc. d/b/a Hollister Co. and Abercrombie & Fitch Management Co. (collectively, the "Abercrombie Entities" or "Defendants") move for summary judgment. [DE 43; DE 44].[1] Plaintiff Virginia English ("English") responded [DE 54], and Defendants did not reply. The Abercrombie Entities also move to exclude expert David Johnson's ("Johnson") testimony [DE 46]. English responded, and Defendants replied. [DE 52; DE 53].  English moves to exclude expert Randy Gray's ("Gray") testimony [DE 48], and strike Defendants' "Statement of Undisputed Facts." [DE 49]. The Abercrombie Entities responded to both of English's motions, and English did not reply. [DE 50; DE 51]. For the reasons below, the Abercrombie Entities' Motion to Exclude Johnson's Expert Testimony [DE 46] is **DENIED**; English's Motion to Exclude Gray's Expert Testimony [DE 48] is **DENIED**; English's Motion to Strike Defendants' "Statement of Undisputed Facts" [DE 49] is **DENIED**; and the Abercrombie Entities' Motion for Summary Judgment [DE 43] is **DENIED**.

---

[1] Although counsel attached memorandums in support of their motion for summary judgment [DE 43; DE 44], the Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. *See* Local Rule 7.1. In the future, counsel is advised to file a unified motion.

## I.    BACKGROUND

On December 18, 2022, English was Christmas shopping at the Greenwood Mall with her granddaughter and husband. [DE 46-2 at 360; DE 46-3 at 368]. English entered Hollister, a clothing store that she had shopped at on more than five prior occasions. [*Id.*]. Fifteen minutes after entering Hollister, English alleges she was looking at some clothes while walking out of the right side of the store when she tripped over a clothes rack and fell. [DE 46-2 at 360].

The clothing rack that English tripped over was placed in the walkway leading to the checkout and is consistently there. [DE 44-5 at 252; *see also* DE 54-4 at 818]. The clothing rack was on wheels. [DE 44-5 at 256; DE 44-8 at 296]. The width of the clothing rack was 24 inches, the height of the clothing rack was 58.5 inches, and the length of the rack was 59 inches. [DE 44-8]. The clothing rack was made of "aluminum tubular welded pipes[.]" [DE 44-7 at 278]. Lights were directed to highlight the merchandise on the clothing rack. [DE 44-6 at 261-62]. Before this incident, Defendants have never been notified that the rack's placement was dangerous. [DE 44-5 at 252].

English alleges that she "went down hard. Hard. There was no tuck and roll, there was no graceful fall . . . And I had a man come up and ask me if he could help me up and I said, 'I think I can get up, but I have to figure out how to do it,' because I couldn't use my right arm. So, I stood up and, like I said, I couldn't lift my arm." [DE 46-2 at 360]. English then informed the cashier at Hollister that she "believe[d] she did some major damage," and that "she fell." [*Id.*]. English's husband and granddaughter did not see English fall, but Wendy Nixon, another shopper, heard a "commotion." [*Id.* at 361-62]. There is no store surveillance of video of the incident. [DE 44-5 at 252]. English was taken to Vanderbilt hospital after the incident. [*Id.* at 361-62].

According to English, the fall caused her to "t[ear] three tendons completely off [her] shoulder and they retracted into [her] back and [her] chest, and [she] crushed the glenoid cavity of [her] shoulder socket. [Her] shoulder came out of joint outside Hollister." [*Id*. at 361]. Her medical records state that she "sustained a Type III RTC from falling when her foot caught on a rolling clothes hanger in the store." [*Id*. at 363; *see also* DE 64-4]. And on January 6, 2023, English had rotator cuff repair surgery to correct the injury that occurred from her fall in Hollister. [*Id*.; DE 64-4 at 376]. After surgery English went to physical therapy until April 6, 2023, when she was discharged for "meeting all therapy goals." [*Id*.].

Because of her injury, English filed a complaint in Warrant Circuit Court, which was removed to federal court under diversity jurisdiction. [DE 1]. Defendants now move for summary judgment [DE 44] and to exclude the testimony of David Johnson ("Johnson"), English's expert witness [DE 46]. Similarly, English moves to exclude the testimony of Defendants' expert, Randy Gray ("Gray") [DE 48] and strike Defendants' "Statement of Undisputed Facts" [DE 49].

## II.    DISCUSSION

### A.  Motions to Exclude Expert Testimonies [DE 46; DE 48].

The admissibility of expert testimony is set forth in Federal Rule of Evidence 702 which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert,* "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Conwood Co. v. U.S. Tobacco Co*., 290 F.3d 768, 792 (6th Cir. 2002) (alteration and internal quotation marks omitted).

> Under Rule 702 of the Federal Rules of Evidence, a proposed expert's opinion is admissible . . . if the opinion satisfies three requirements. First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable.

*Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008)).

The Court does "not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). The Court must determine whether the witness is qualified to offer an opinion on the specific area of expertise. *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 WL 1868046, at *33 (N.D. Ohio Aug. 8, 2005) ("An expert may be highly qualified to respond to certain questions and to offer certain opinions, but insufficiently qualified to respond to other, related questions, or to opine about other areas of knowledge."). "Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact." *Mannino v. Int'l Mfg. Co*., 650 F.2d 846, 851 (6th Cir. 1981).

Along with expert qualifications, "[t]he Court must determine whether evidence proffered under Rule 702 'both rests on a reliable foundation and is relevant to the task at hand.'" *Powell v.*

*Tosh*, 942 F. Supp. 2d 678, 686 (W.D. Ky. 2013), adhered to on denial of reconsideration, No. 5:09-CV-00121-TBR, 2013 WL 1878934 (W.D. Ky. May 3, 2013) (quoting *Daubert*, 509 U.S. at 597). When a party challenges the testimony of a proffered expert for insufficient "factual basis, data, principles, methods, or their application . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [his or her] discipline." *Kumho Tires*, 526 U.S. at 142 (quoting *Daubert*, 509 U.S. at 592). To assist with this determination, the Supreme Court in *Daubert* laid out several factors for the courts to consider. *Daubert*, 509 U.S. at 592–594. These factors include: "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan,* 263 F.3d 613, 621 (6th Cir.2001) (citing *Daubert,* 509 U.S. at 593–94). The test of reliability is "flexible," and the *Daubert* factors do not constitute a "definitive checklist or test," but may be tailored to the facts of a particular case. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1990) (citing *Daubert,* 509 U.S. at 593).

Courts have "stressed, [] that Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. . . [i]n some cases . . . the factors may be pertinent, while in other cases the relevant reliability concerns may focus upon personal knowledge or experience." *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding the *Daubert* factors "unhelpful" in a case involving "expert testimony derived largely from [expert's] own practical experiences throughout forty years in the banking industry [because] [o]pinions formed in such a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation") (internal citations omitted). "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id*. *Daubert* involves balancing the desire

5

to liberally admit relevant evidence against the necessity of excluding misrepresentative "junk science." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009) (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)).

Likewise, Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. Federal Rule of Evidence 703 identifies three types of evidence on which an expert's opinion may be based: (1) "firsthand observation of the witness;" (2) evidence presented at the trial; and (3) "data [presented] to the expert outside of court and other than by his own perception."

Pursuant to Federal Rule of Evidence 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue," but an expert is not permitted to render legal conclusions. *Univ. of Tenn. Rsch. Found. v. Caelum Biosciences, Inc.*, No. 3:19-CV-508-CEA-DCP, 2024 WL 3266602, at *5 (E.D. Tenn. July 1, 2024). An expert improperly offers a legal conclusion when "he defines the governing legal standard or applies the standard to the facts of the case. *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016); *see also Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019) (finding that the expert did not state a legal conclusion because she did not "frame[ ] her opinion in the 'specialized' language of disability discrimination law" and did not "even use the words 'pretext' or 'discrimination' in her report"); *Berry*, 25 F.3d at 1353 (explaining in the context of expert testimony that "[w]e would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we

6

would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact)[,because] . . . [t]he distinction, although subtle, is nonetheless important"); *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985) ("The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct, and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." A legal conclusion is not helpful to the jury because it merely instructs the jury in what verdict to reach. *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997).

1. Defendant's Motion to Exclude Plaintiff's Expert Testimony of David Johnson [DE 46].

English offers the opinion of David Johnson ("Johnson") to show that the clothing rack "formed a low profile, low contrast, inconspicuous obstruction in a foreseeable passageway/walkway that was unsafe and unreasonably dangerous." [DE 46 at 326]. Johnson opines on "whether the low-profile, protruding base crossmember of a portable clothes rack display parked in the aisle acted as an unsafe condition and foreseeable walkway impediment, whether the store conformed with industry standards for display bases and whether the store complied with safety standards and codes for walking surfaces are the purpose of the study." [DE 46-1 at 340]. Defendants argue that Johnson's testimony should be excluded because it "is based purely on speculation, will not aid the trier of fact, and will instead confuse the issues and mislead the jury." [DE 46 at 323]. In sum, Defendants challenge the reliability and relevance of Johnson's testimony. English counters that Johnson's testimony is admissible under Federal Rules of Evidence 702, 403, and 403. [DE 52 at 640].

a. *Reliability*

Defendants assert that Johnson's report is not reliable because it is based on his own speculation and on incomplete information. [DE 36 at 328]. Defendants also assert that Johnson's

testimony is unreliable because "his own testimony contradicts his assumptions," and that "Johnson cites no applicable codes or regulations with which the clothing rack failed to comply with." [*Id*. at 330-332].

Properly qualified expert testimony is reliable where it is "based on sufficient facts or data[,]" and is "based on reliable principles and data." Fed. R. Evid. 702(b)-(c). Under *Daubert*, for an expert's opinion to be reliable it must be "supported by appropriate validation—i.e., "good grounds," based on what is known." *In re Scrap Metal Antitrust Litig*., 527 F.3d at 529 (citing *Daubert*, 509 U.S. at 590). Stated differently, reliability does not depend on the accuracy of the opinion but "whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Lucio v. Levy Env't Servs. Co*., 173 F. Supp. 3d 558, 565 (N.D. Ohio), *aff'd*, 670 F. App'x 889 (6th Cir. 2016) (citing *In re Scrap Metal Antitrust Litig*., 527 F.3d at 529). "Whether the facts are 'sufficient' in the context of Rule 702 does not mean the Court determines whether [Johnson's] version of the facts will ultimately 'suffice' for trial; the facts and data, however hypothetical or assumed, merely need to be 'sufficient' for the expert to 'reliably apply' 'reliable principles and methods.'" *Magna Elecs. Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-cv-654, 2016 U.S. Dist. LEXIS 156780, at *9 (W.D. Mich. Feb. 4, 2016). The Sixth Circuit has recognized that even with reliable science on both sides of an issued, reasonable minds may reach opposite conclusions, and it is the finder of fact who must weigh conflicting evidence to reach a final result. *United States v. Bonds*, 12 F.3d 540, 563 (6th Cir. 1993). "The question of whether the expert's opinion is accurate in light of his use of certain data goes to the weight of the evidence, not to its admissibility." *In re Scrap Metal Antitrust Litig*., 527 F.3d at 531-32.

Speculation occurs when an expert provides an opinion without a solid basis in fact or data. *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993). "To determine if expert

testimony is reliable, a Court looks to whether the testimony is based on sufficient facts and data, the product of reliable principles and methods, and if the expert applied these principles or methods reliably to the facts of the case." *Johnson v. BLC Lexington SNF, LLC*, 478 F. Supp. 3d 578, 589 (E.D. Ky. 2020) (quoting Fed. R. Evid. 702).

First, Defendants challenge Johnson's reliability because he assumes facts to reach his conclusion. [DE 46 at 328]. Defendants object to Johnson's assumption that English fell when "her foot be[came] stuck and then unstuck under the clothing rack," because it "is nothing more than his subjective belief based on speculation and incomplete information." [*Id*. at 329]. However, "[u]nder settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true." *Williams v. Illinois*, 567 U.S. 50, 57 (2012). Stated another way "an opinion may be based on facts that are 'assumed,' or 'hypothetical' at the time of the report, provided that those facts are ultimately 'established' by other, independent evidence." *Magna Elecs., Inc. v. TRW Auto. Holdings Corp*., No. 1:12-cv-654, 2016 U.S. Dist. LEXIS 156782, at *8 (W.D. Mich. Jan. 28, 2016).

Johnson did not fabricate that English's foot became stuck under the rack. In fact, English's medical records state that she "sustained a Type III RTC from falling when her foot caught on a rolling clothes hanger in the store." [*Id*. at 363; *see also* DE 64-4]. Therefore, the argument that Johnson's opinion is based on unsupported speculation is unpersuasive, as Johnson's assumption that English fell when her foot became stuck under the clothing rack is supported by evidence in the record. *See Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc*., No. 16-CV-13456, 2019 WL 3334565, at *3 (E.D. Mich. July 25, 2019) ("It is clear that experts may permissibly rely on assumptions about underlying facts that are stated to them by the client.").

Further, many of the objections raised by Defendants regarding Johnson's reliability go to the weight that should be given to the expert's opinions, and not to their exclusion. *See In re Capacitors Antitrust Litig*., 2020 WL 870927, at *2 (N.D. Cal. Feb. 21, 2020). Defendants challenge Johnson's opinion that the clothing rack constitutes a platform or a display base because "the feet of clothing rack were below knee-level and/or under three feet in height." [DE 46 at 329]. Defendants also argue that because the feet of the rack cannot be separated from the clothing rack, Johnson's opinion must be excluded as it is in direct contradiction of his own testimony and would also mislead the jury and confuse the issues. [*Id*. at 330]. And Defendants challenge Johnson's opinion because he opines that Hollister did not violate any applicable codes, and because he based his opinion on the existence and placement of the clothing rack, not whether the clothing rack was defective. [DE 46 at 331, 334-35]. These objections challenge the conclusions made by Johnson, not its reliability, and therefore, cross-examination is the appropriate method to challenge these opinions. *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256, at *4 (N.D. Cal. Mar. 23, 2022). Defendants will have a full opportunity to cross-examine Johnson at trial.

   b.  *Relevance*

Defendants argue that the "additional, miscellaneous complaints of [ ] Johnson" lack any basis in support and would not aid the trier of fact because he "offers a hodge-podge of unsupported additional reasons why the clothing rack may be considered dangerous[,]" which lacks scientific basis. [DE 46 at 332-334]. For example, Defendants assert that Johnson's opinion regarding the lighting of the clothing rack is irrelevant because "he did not observe the rack with the additional holiday lighting that was placed." [DE 46 at 332]. However, Johnson relied upon the testimony taken in the case, including of the store manager who testified that the store is dim, dimmer than

most other stores in the mall, and that the lighting can create shadows on the floor. [DE 52-2, Johnson Dep. at 681-82; DE 52-6 Moser Dep.at 782]. Federal Rule of Evidence 703 permits an expert to base their opinion on facts or data that they have been made aware of. Defendants do not expressly criticize Johnson's consideration of Moser's testimony on lighting. Moreover, that Johnson did not observe the rack with the additional holiday lighting is a potential limitation to his opinion, the weight of which can be decided by a jury. It is not a potential flaw that renders his opinion excludable.

 Defendants also argue that Johnson's opinion that the rack was unexpected would confuse the jury because the Sixth Circuit has already taken judicial notice that clothing racks are expected in department stores during the holiday shopping season. [*Id.* at 333]. But Johnson's opinion about the rack being unexpected is specific to the facts of this case, not that all clothing racks in a store are unexpected. The real crux of Defendants' argument is that they disagree with his findings. [*See* DE 46 at 332-3].

Likewise, Defendants state that Johnson's opinion that the clothing rack was a hazard because English "was likely distracted by shopping and not paying attention," but these arguments merely mischaracterize Johnson's opinion as devoid of any relevance solely because they disagree with the accuracy and the empirical basis that Johnson used. *In re Scrap Metal,* 527 F.3d at 529-30. Thus, because Johnson's expert opinions are relevant and reliable, Defendant's Motion to Exclude Johnson's Expert Opinion is **DENIED**.

2. <u>English's Motion to Exclude Defendant's Expert Testimony of Randy Gray [DE 48]</u>.

Defendants offer the opinion of Randy Gray ("Gray") "to render an opinion regarding the December 18, 2022, fall accident of [English.]" [DE 48-2 at 509]. Gray opines regarding the "extent [to which] any adopted CFR regulations appl[ied] to the actions of [English] and

Abercrombie & Finch Stores, Inc. on the date in question, and what are the identifiable issues with respect to the conduct of all parties and individuals concerning the accident[.]" [*Id.*]. English argues that Gray is not qualified to testify as an expert in this matter, his testimony will not assist the trier of fact and is likely to mislead the jury. [DE 48]. Defendants responded, stating that Gray is qualified to serve an expert in this matter because he has the education and experience to do so, and Gray's disagreement with English's expert cannot serve as the basis of disqualification. [DE 51 at 560-64].

   *a. Qualification*

   "The admissibility of . . . expert testimony in federal court turns on whether the proffered witness is qualified as an expert by knowledge, skill, expertise, training or education." *Elswick v. Pikeville United Methodist Hosp. of Ky., Inc.*, 50 F. App'x 193, 195 (6th Cir. 2002) (citing Fed. R. Evid. 702). The focus must remain on whether the expert's "qualifications provide a foundation for a witness to answer a specific question, not whether the expert is qualified in the abstract." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). "Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth.  The weight of the expert's testimony must be for the trier of fact." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).

   But, having a degree or diploma "is neither a necessary nor a sufficient condition for qualification as an expert because the expert's education must be relevant to the opinion, and qualification may be based on knowledge, skill, training, experience or training as well." *Zuzula*, 267 F. Supp. 2d at 713. The principle of *Daubert* "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same

level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152 (emphasis added). "It is well established that experience-based testimony satisfies Rule 702 admissibility requirements." *In re E.I. du Pont de Nemours & Co. C-8 Personal Inj. Litig.*, 345 F. Supp. 3d 897, 902 (S.D. Ohio 2015).

Gray's experience satisfies Rule 702's qualifications requirement. He has over 25 years of conducting OSHA inspections of workplaces based on federal and state regulations, while being employed at Kentucky Labor Cabinet, Division of Compliance, Occupational Safety & Health. [DE 48-2 at 508]. He has also worked fifteen years in the private sector as the President of Grayhawk Advantage, Inc., where he provides expert witness investigation services and reports regarding hazardous workplace conditions that caused injuries to clients. [*Id.*]. He has a Bachelor of Science degree from Murray State University in Occupational Safety & Health, a Masters degree in Science from Murray State University in Occupational Safety & Health, and twenty-five years of specialized training courses at the Occupational Safety and Health Training Institute. [DE 51-3]. He also has a decade of continuing education at the American Society of Safety Engineers National Professional Development Conference, SEAK Annual Expert Witness Conference & Workshops, and the American's Safest company's Safety Leadership National Professional Development Conference. [*Id.*].

Gray's significant experience, which has contributed to his knowledge and skill, make his knowledge specialized and beyond the scope of an ordinary juror. *See Zuzula*, 267 F. Supp. 2d at 713. The Court therefore finds Gray is qualified under Rule 702 and *Daubert* to offer expert opinions regarding whether an unsafe and dangerous condition existed at Hollister, and whether Hollister failed to inspect, maintain, remedy, or warn of the condition.

    *b.  Relevance and Unduly Prejudicial*

English also argues that Gray's opinion that Defendants did not violate any Codes of Federal Regulation "will not assist the trier of fact and its probative value is substantially outweighed by the danger or confusing the issues or misleading the jury." [DE 48 at 443]. English challenges Gray's use of 29 C.F.R. § 19. [*Id*. at 444].

As discussed above, evidence is relevant if it assists the trier of fact in understanding the evidence or determining a material fact in question. *See Daubert*, 509 U.S. at 591-93. "Expert testimony which does not relate to any issue in the case is not relevant . . ." *Daubert*, 509 U.S. at 591. Evidence is relevant if it assists the trier of fact in understanding the evidence or determining a material fact in question. *See id*. at 591-93. Likewise, "Rule 403 . . . is strongly weighted toward admission." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018); *see also United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993). The rule protects against the "danger of *unfair* prejudice, not mere prejudice." *Robinson v. Runyon*, 149 F.3d 507, 514 (6th Cir. 1998) (emphasis in original). Unfairly prejudicial evidence is that "which tends to suggest a decision on an improper basis." *Paschal v. Flagstar Bank*, 295 F.3d 565, 579 (6th Cir. 2002) (quoting *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993)). In other words, "the rule only applies when it is likely that the jury will be moved by a piece of evidence in a manner that is somehow unfair or inappropriate." *In re Air Crash Disaster*, 86 F.3d 498, 538 (6th Cir. 1996).

Here, Gray's testimony will assist the trier of fact in determining whether a dangerous condition existed at the time of English's fall. First, although OSHA standards apply to employees, Gray's opinion could still help jurors determine whether an unsafe condition existed at the time of English's fall. Second, these objections raised by English go to the weight that should be given to the expert's opinions, and not to their exclusion. *See In re Capacitors Antitrust Litig*., 2020 WL

870927, at *2 (N.D. Cal. Feb. 21, 2020). And, finally, as this opinion is not unfair or inappropriate, the jury would be within its discretion to credit Gray's testimony to conclude that a dangerous hazard did not exist. *See Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1048 (6th Cir. 1996). Accordingly, English's Motion to Exclude Gray's Expert Opinion is **DENIED**.

### B. Plaintiff's Motion to Strike Defendant's "Statement of Undisputed Facts" [DE 49].

English moves this Court to strike Defendants' Statement of Undisputed Facts because "[t]his statement is the equivalent of an extensive request of admissions that has been filed past the discovery deadlines imposed by the Court." [DE 49 at 547]. In response, Defendants argue that "[t]he fact that filing a Statement of Undisputed Material Facts is not compulsory in the Western District of Kentucky does not render it improper, nor does it necessitate that the statement be stricken." [DE 49 at 1].

Federal Rule of Civil Procedure 12(f) governs motions to strike and empowers the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court may strike portions of the pleading on its own initiative or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(1)–(2). "Motions to strike under Rule 12(f) are addressed within the sound discretion of the Court, although they are generally disfavored." *Hashemian v. Louisville Reg'l Airport Auth.*, No. 3:09-CV-951-R, 2013 WL 1788473, at *5 (W.D. Ky. Apr. 26, 2013) (citing *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (internal citations omitted)). "Striking a pleading is a drastic remedy to be resorted to only when required for purposes of justice." *Id.* (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F. 2d 819, 822 (6th Cir. 1953)). "A motion to strike should be granted only where there is a clear showing

that the challenged defense has no bearing on the subject matter and that permitting the matter to stand would prejudice the party." *Id.* (citing *Ameriwood*, 961 F. Supp. at 1083).

Rule 12(f) makes clear that a court may strike only material that is contained in the pleadings. Since Defendants' motion is not a pleading, it is not a proper subject of a motion to strike under Rule 12(f). *See Martin v. Citimortgage*, No. 1:14-CV-134-GNS, 2015 WL 1438057, at *3 (W.D. Ky. Mar. 26, 2015). Additionally, English argues that Defendants' filing is discovery, Defendants' Statement of Undisputed Facts is merely a list of facts that they claim are undisputed, not "an extensive request of admissions." [*See* DE 45]. For one, although Defendants' Statement of Undisputed Facts includes a section for English to respond, when reviewing the filing, it reads as more of an area for English to object to whether the facts are disputed. [*See id.*]. And even if Defendants' Statement of Undisputed Facts constitutes as discovery, English's Motion to Strike is not the correct mechanism. Therefore, English should have objected to Defendants' Statement of Undisputed Facts, not strike. Accordingly, English's Motion to Strike is **DENIED**.

## C.  Defendant's Motion for Summary Judgment

Defendants argue that summary judgment is appropriate because English cannot establish a prima facie case of premises liability and even if she could, the clothing rack was an open and obvious condition. [DE 44 at 217-24]. In response, English argues that these issues are factual issues that must be decided by the jury, and not at summary judgment. [DE 54 at 794].

### 1.  Standard

Under Fed. R. Civ. P. 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 242.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir. 2003*)* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., LLC v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (*quoting Kendall v. Hoover Co*., 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). If the

nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

2. <u>Analysis</u>

It is undisputed that English was injured in Hollister and that she was a business invitee. However, the parties dispute whether the clothing rack can be considered an unreasonably dangerous condition and if so, whether the clothing rack was "open and obvious." [*See* DE 44; DE 54].

Under established Kentucky law, a burden shifting framework exists for premises liability actions involving injuries to business invitees. *Phelps*, 630 S.W.3d at 628; *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d, 431, 436-37 (Ky. 2003). In a slip-and-fall case, the invitee has the burden of proving that: (1) he or she had an encounter with a foreign substance or other dangerous condition on the business premises; (2) the encounter was a substantial factor in causing the accident and the invitee's injuries; and (3) by reason of the presence of the substance or condition, the business premises were not in a reasonably safe condition for the use of business invitees. *Martin v. Mekanhart Corporation*, 113 S.W.3d 95 (Ky. 2003). Only after establishing each of these elements does a plaintiff present a rebuttable presumption sufficient to avoid summary judgment and shift the burden of proving the absence of negligence to defendant. *Id.*

Defendants only challenge the first element asserting English "cannot present any, let alone sufficient, evidence to support the first element for a premises liability action – the existence of a dangerous condition." [DE 44 at 218]. English argues that there is evidence in the record to show that the clothing rack was a dangerous condition. [DE 54 at 795]. She points to Mosier's and Johnson's testimony to support her position. [*Id.* at 795-98]. In relevant part, Mosier states that the racks were usually placed in the walkway, the racks are easy to move because they cannot be

locked, there are no warnings about the rack, and that the store was dimmer compared to most stores at the mall. [DE 44-6 at 259, 261]. Expert witness Johnson provided evidence that the clothing rack is dangerous based on its measurements, location, and the lighting of the store. [DE 44-7]. Defendants' own expert witness includes pictures that show how the clothing rack's feet protrude farther than the rack itself. [DE 44-8 at 295-301]. Thus, there is a genuine issue of material fact as to whether the clothing rack constitutes a "dangerous condition."

However, presuming that the rack created a dangerous condition, Defendants can argue that a condition is open and obvious to avoid liability, as they did here. Generally, if a dangerous condition is open and obvious then it is not unreasonably unsafe because an invitee can be expected to discover the condition and take protective measures. *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526 (Ky. 1969). "[T]he term 'obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man in the position of the visitor exercising ordinary perception, intelligence, and judgment." *Id*. at 529.

Defendants argue that English's negligence claim "still must fail because any hazard presented by the clothing rack is open and obvious." [DE 44 at 221]. Defendants assert that the clothing rack was both subjectively known and objectively obvious and Defendants did not breach any duty. [*Id*. at 221-23].

When discussing the open and obvious doctrine, the Supreme Court of Kentucky held:

> The open-and-obvious nature of a hazard is, under comparative fault, no more than a circumstance that the trier of fact can consider in assessing the fault of any party, plaintiff or defendant. Under the right circumstances, the plaintiffs conduct in the face of an open-and-obvious hazard may be so clearly the only fault of his injury that summary judgment could be warranted against him, for example when a situation cannot be corrected by any means or when it is beyond dispute that the landowner had done all that was reasonable.

*Carter*, 471 S.W.3d at 297 (citations omitted). "Thus, according to the Supreme Court, an open and obvious hazard is now to be considered by the jury in allocating fault between the landowner and the invitee unless it is 'beyond dispute that the landowner had done all that was reasonable' or the hazard 'cannot be corrected by any means.'" *Shirrell v. Kroger Co.*, No. 2015-CA-000362-MR, 2016 WL 4256902, at *2 (App. Aug. 12, 2016) (citing *Carter*, 471 S.W.3d at 297).

Here, it is not "beyond dispute" that Defendants "had done all that was reasonable" or that the clothing rack could not have been "corrected by any means." *See Carter*, 471 S.W.3d at 297. As discussed above, English provided evidence that a reasonable juror could find persuasive that the clothing rack was dangerous, and this same evidence can be used to support that the clothing rack was not open and obvious. Viewing the facts and inferences in a light most favorable to English, it is not beyond dispute that the clothing rack was open and obvious. *See id.* at 288.

At this stage, the moving party must show under Federal Rule of Civil Procedure 56, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants have not shown that there is no dispute of material fact, and thus, are not entitled for judgment as a matter of law. For all the reasons stated above, summary judgment in Defendants' favor must be **DENIED**.

## CONCLUSION

Accordingly, the Court, having considered the parties' motions and related filings and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Hollister's Motion to Exclude Johnson's Expert Testimony [DE 46] is **DENIED**;

(2) English's Motion to Exclude Gray's Expert Testimony [DE 48] is **DENIED**;

(3) English's Motion to Strike Hollister's "Statement of Undisputed Facts" [DE 49] is **DENIED**; and

(4) Hollister's Motion for Summary Judgment [DE 43] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

June 6, 2025

21